## WILBUR F. HINMAN, RECEIVER, v. WILLIAM RYAN ET AL.
## PERRY PRENTISS, ADM'R, v. ANNE CODY ET AL.

**1. ARE CORPORATIONS FORMED FOR PROFIT.**

Building associations are corporations formed for profit, having a capital stock and the respective powers and duties of the corporation, and its members are to be decided according to the statutes of Ohio relating to such corporations.

**2. PAYMENT OF DUES IS SAME AS PAYMENTS ON CAPITAL STOCK OF OTHER CORPORATIONS.**

In this case the constitution adopted by the corporation provided for the payment of dues which were to continue until the full amount of the capital was paid in full; these payments upon stock subscription are analogous to such payments in other stock corporations upon capital stock.

**3. PAYMENTS OF DUES HAVING STOPPED, BORROWER WHO CEASES PAYING IS NOT IN DEFAULT.**

The corporation having been mistaken in its basis of business (similar case in 25 O. S., 208), by common consent all stopped paying dues, although the stock was not paid in full. Held, that the stoppage being by universal consent, and by all, there was no default thereby.

**4. OBLIGATION TO PAY DUES CEASES WHEN ASSOCIATION GOES INTO LIQUIDATION.**

That the corporation having gone into liquidation under the statutes of Ohio relating to the dissolution of corporations, there would be no more dues except as assessments should be ordered by the court for the purpose of paying the debts of the corporation and equalizing the stockholders among themselves.

**5. OFFICERS CANNOT ASSIGN MORTGAGE WHEN DISSOLUTION PROCEEDINGS ARE PENDING.**

In these actions, in which the receiver of said corporation seeks to recover upon mortgages given by the members to the corporation, and which were also claimed to be owned by persons claiming by assignment. Held, that after the proceedings for dissolution were pending under the act in 64 O. L., 153, as amended 72 O. L., 138 (now Rev. Stat. 5651, 5688), an attempted assignment of a mortgage by the officers of the corporation was void as against the receiver (Rev. Stat. 5661, 64 O. L., 153, sec. 13.)

**6. MONTHLY INTEREST MAY BE RECOVERED ALTHOUGH DUES STOP.**

In these cases the obligation of the mortgages were to secure the contract, which was a note with interest at six per cent., payable monthly, followed by stipulations therein recited. Held, although dues had stopped by general consent, and the corporation was in the hands of the receiver, that without any special assessment by an order by the court, the mortgage continued to draw interest payable monthly, and there being no defense showing that without this interest there were assets sufficient to equalize the stockholders, the receiver is entitled to recover the accrued interest, for which decree was rendered without prejudice to future action.

ERROR to the Court of Common Pleas of Cuyahoga county.

BALDWIN, J. (orally).

The two cases of Wilbur F. Hinman, Receiver, v. William Ryan and others, and Perry Prentiss, Administrator, v. Anne Cody and others, although their names are very different, involve practically the same principles of law, and, to a very large degree, the same facts.

Hinman was receiver of The Mechanics' Land & Building Loan Association, succeeded by Mr. Sherwood. The action of Wilbur F. Hinman, Receiver, is an action to foreclose a building association mortgage against Ryan. The case

of Perry Prentiss, Administrator, is an action that was originally brought to foreclose a second mortgage upon property upon which exists a first mortgage to the same association, which is represented by the receiver, and which, the Prentiss mortgage having been paid off, is undertaken, in the action of Prentiss, to be foreclosed by the receiver, and all there is left of it is the foreclosure of a mortgage by a receiver. So that practically it is a foreclosure by the same receiver of the same corporation against two different mortgagors, and the same class of facts exists in regard to both.

It seems that The Mechanics' Land & Building Loan Association was an association which, in due time, did as other building associations have done— it undertook to redeem a portion of its stock. It had done business on a somewhat false basis. The persons who borrowed money of it secured their money by the bidding of a large premium. For instance, a person who got nominally a thousand dollars would bid a premium of forty per cent., perhaps; so that he would get only six hundred dollars, and it collected interest upon the basis of a thousand dollars, instead of the six hundred which he got, which was decided by the supreme court, in a case of Building Assn. v. Gallagher, 25 O. S., 208, to be illegal and improper. The end was that a proceeding was brought which involved a contest as to which of two boards of directors was competent, and for a dissolution of the corporation, under the act found in 64 O. L., 153, as amended, 72 O. L., 138 (Rev. Stat., 5651-5688); and this receiver was appointed in those proceedings, and he now appears as foreclosing the mortgages.

In both cases the mortgagors paid interest and dues up to a certain time. They paid interest on the full nominal amount of their loans—for instance, on the basis of a thousand dollars, instead of the six hundred dollars which they got; and that being usury, under the decision of the supreme court, there is a balance to be applied. It can hardly be claimed, we think, that they paid dues for a less time than they were obliged to pay dues as the matter then stood. They paid dues as long as anybody else did, and until, by common consent, dues were dropped; and within certainly not more than two or three months after the matter was dropped by common consent for the non-payment of dues, the proceedings for dissolution were commenced, and the affairs of the corporation were put into the hands of the law.

In each of these cases there appears another claimant, under each of these mortgages, who claims that the association assigned to him these mortgages, and he claims to be entitled to foreclose them, instead of the receiver. In each case the assignment was made or purported to be made by the association after the proceedings had been commenced for the dissolution. We had occasion to discuss that matter quite fully in the case of Broderick against this same association, and we do not think it is necessary in this case to say anything more than to refer to that case as the authority in which, in our minds, we settled it by a careful and elaborate statement of the reasons which we had why this association, after the time that those proceedings for dissolution were commenced, was not in a condition to transfer its assets, which must be held for the proceedings already then pending in the courts. Under sec. 13, 64 O. L., 153, now Rev. Stat., 5661, these assignments were void as against this receiver. So that, without saying any more, I shall say that in each of these cases we find that the transfers which are claimed to have been made to other, third parties, of these mortgages, are void.

Then the question comes down directly as between the receiver and the mortgagors.

It is claimed upon the part of the receiver that he is entitled to recover the full amount of the note. The note was for $1,000, on which the party received, for instance, $600. The plaintiff claims that he is entitled to recover upon that note $1,000, and to have the property sold for the payment of the $1,000, the full amount. On the other hand, it is claimed that the receiver is not entitled

to recover anything. There are various other claims made ranging between those, the receiver being willing and anxious, if he cannot recover the whole of that $1,000, to get such amount less than that as the court may think he is entitled to. It is claimed that he is entitled to a judgment for that $1,000, and if the court think there should be an adjustment between this person and other persons, the judgment standing, execution to be issued at some future time when the court shall find that there has been an adjustment by which the amount that this person should pay in to settle the matters between himself and other parties has been ascertained; because, the corporation having come to a practical end, as far as its own conduct of its own affairs is concerned, the various members and stockholders of this corporation are left in various conditions of credit or debt to this corporation, and they have obligations and duties as between themselves, and, in order to work even and exact justice between these various parties, there is an adjustment to be made. Some of these parties have redeemed their stock by taking loans, and they have actually received money. There are other parties who have been paying in money in the shape of dues all the time, and, they have not received any money. One side have money in their pockets, while the other side have been money out; and some of the parties have undertaken to go through the operation, which was so severely criticised in the case of State v. Building Assn., 35 O. S., 258, of selling their stock to the corporation, and, for a fixed price paid down, having their relations with the corporation entirely dissolved. It is pretty plain that, in order to do complete justice between the parties, there should be a suit in which everybody interested on one side or the other of this matter should be represented, and matters should be evened up and adjusted as between these parties.

In the meantime, the receiver claims that upon this contract he is entitled to maintain a suit in foreclosure. The mortgage in this case does no more than to secure the obligation. Sometimes in mortgages, and in some of the cases which appear in the books, which have been before us in the discussion of this case, there are additional terms to those in the money obligation; but in this particular case, so far as it is a contract obligation and to be determined according to that, it turns upon this contract:

"$1,000.                     Cleveland, Ohio, February 22, 1870.

"For value received, I promise to pay to The Cleveland Mechanics' Land & Building Loan Association, of Cleveland, the sum of one thousand dollars, with interest at six per cent. per annum, payable monthly.

"This obligation is given for money loaned under the by-laws and regulations of said association; and in case the said monthly interest, or any part thereof, shall remain unpaid for thirty days after the same becomes due, or should the stock owned by the undersigned in said Association be sold for the non-payment of the monthly installments on said stock, then and in either case this obligation shall thereupon immediately become due and collectible. But in case said interest and said installments on said stock shall all have been paid as aforesaid, then the principal of this obligation shall become due when the value of the assets of said Association shall be sufficient to divide to each share of said stock the sum of two hundred dollars or its equivalent, and the said principal shall then be paid by applying sufficient amount of stock owned by the undersigned to the payment of the principal, and thereupon, the undersigned shall cease to have any interest in said stock so applied."

It is said by the receiver that under the terms of this the interest has not been paid as due, and that the dues, meaning such dues as were fixed at the outset, ceased to be paid, and although at a time when everybody else ceased to pay them, and when the association had stopped doing business in its ordinary course of business, under these terms the whole of this became due.

The discussion was at great length before us in regard to building associations, and yet we did not feel that it was at too great a length. There was a very interesting discussion of the views that had been taken of building associations in various states, and it was sufficient to show that there had been great and many differences in views, and that the subject was apparently a difficult one. It has not seemed to be easy at once to determine what were the rights of the parties.

But it has seemed as if these cases were practically to be determined by us, in a very great degree, under the constitution, the statutes and the decisions of this state, and as if what appears in this state must be the groundwork of our opinion.

This is a corporation which was organized in 1867 by force of 64 O. L., 18, under secs. 63, 64, and 65 of the act of 1852, which authorized the formation of corporations for purposes which it is not necessary to particularize. Those sections provided for the organization of manufacturing and other corporations. Those were corporations for purposes of profit, and had a capital stock. This, then, was a corporation in this state, formed for purposes of profit, having a capital stock. State v. McGrath (Sup. Ct. Ill.), 14 N. W. Rep., 733. As far as the purposes of the corporation were concerned, that stock must be paid up at the proper times, and, under the constitution and the laws of this state. But under this law there was also a collateral, statutory liability. The law would be unconstitutional, if that was not provided, as decided by the supreme court in the case of State v. Sherman, 22 O. S., 411, although, under a precisely similar state of facts, the supreme court of Kansas has decided that the constitution executes itself. In short, under the laws of the state of Ohio, this is analogous to any other corporation having capital stock and organized for purposes of profit; and as far as those analogies can be carried out, we think there is every reason why they should fully apply to this corporation. We say, then, that the capital stock of this corporation was to be paid up as far as it was necessary for the purposes of that corporation. In this particular instance installments of stock subscriptions are called dues. Those are really payments made upon the stock subscription. In ordinary cases directors passed resolutions whereby they declare that the stock shall be paid up and so and so. Here it is declared that it shall be paid up so much monthly, and the payments which are to be made upon that are payments upon stock subscriptions. These corporations contemplated that the persons would continue as stockholders, and liable for the payment of their dues, which were payments upon stock subscriptions, until the purposes of the corporation were effected; that the value of all the shares would be fully equal to the par value of the stock, and that then the corporation should cease. It was nevertheless a corporation for profit, having a capital stock. Now, if another corporation for profit, having capital stock, goes into insolvency, then a somewhat new condition of things exists, which we think is completely analogous to the conditions which exist here, as far as I now speak of them—that is, that the installments that are called for after that are installments that are to be called for under the direction of the court, and for such sum as is necessary to carry out the adjustment of the affairs of the corporation by the payment of its debts and the settlement of affairs between the stockholders. That may or may not absorb the whole of the subscription to the capital stock. If it does not, then the balance of the capital stock will not be called for, and we see no reason why that may not be done in this corporation precisely as it is done in any manufacturing or moneyed corporation. The installments that may be called for by the court thereafter are in the place of dues, and bear the same relation to the dues that in the other corporation the installments called for the purpose of settling up the affairs of the corporation bear to what before we called payments on stock subscription under calls made by the directors. In this case there is something additional. There have been made

to each of these individuals loans of money by the corporation. They have called it a redeeming of stock. Yet, by that redeeming of stock, the parties still continue to pay their dues, and are bound under their contracts to pay precisely the same dues upon their stock that they were to pay before; so that the borrower and non-borrower pay the same dues upon the same number of shares of stock, and, as far as that is concerned, are upon a precise equality. But there is not an equality as far as the borrowers are concerned, in another respect, because the borrowers have obtained money.

Now, it is said that the purpose of the corporation having come to an end—that is, to collect in all these moneys—and it being impossible that the corporation should go on, so that, in the transaction of the affairs of the corporation in the ordinary way, the shares of this stock should be made worth, in this instance, $200 per share, the consideration of these mortgages has failed. Yet it seems rather difficult to say that the consideration of an obligation in a mortgage has failed when the man who asserts that the consideration of it has failed all the while has $600 or more in his pocket which he got by virtue of it. It is not fair. It seems to us as if what was equitable between these parties was that in some way there should be an accounting on account of these moneys; and it does not necessarily follow that because the dues have ceased, therefore all kinds of obligations to make payments on account of the moneys that these parties have had on these mortgages cease.

It is said that other parties don't pay. But it is not to be said that other parties will not pay. It is fair to expect, and perhaps,—I don't know whether it is hardly in evidence in this case—it is known by everybody in this case—there are other proceedings pending which will call these various parties to account, so that each of these parties, as far as he is responsible, will have to pay in, or will be entitled to receive in the end such an amount as, on an adjustment between themselves, is fair.

Now, how does the receiver stand upon this contract? As I have said, there was a claim that this mortgage ceased—was absolutely at an end. That certainly does not seem fair, because the mortgagors have got that money, and they have that advantage over the others by virtue of it. Nor do the authorities which have been cited to us tend to bear that out. The defendants have cited a good many authorities from various states, laying down various rules, and looking through various kinds of spectacles at the obligations of these parties, but there is not one of them that has not maintained a suit upon the mortgages by the proper party for the amount which that court conceived was the proper amount for the mortgagor to pay in a fair adjustment of matters as between himself and the corporation, where it was within the terms of his contract. But the court cannot make a new contract. What the court must do is to carry out, as far as they can, a fair settlement of the rights as between these parties, just so far as this contract says that it may be done; this contract is the contract that governs this case.

Now, how is it about this contract? And what, under this contract, is its effect? I hope we have shown that there is not anything so remarkably peculiar about this corporation that we are not to approach this contract in the ordinary way and construe it fairly as a contract.

It is said that there is no obligation to pay interest after the company became insolvent. We do not see anything in this contract that says that when that corporation becomes insolvent it is not going to draw interest any longer. It does not seem equitable, and we do not see any reason why we are obliged, under that contract, to say that that is the case. But the receiver says that because of the non-payment of that interest, the principal has become due, and that he is entitled to recover the full amount, admitting that if, in the end, by reason of adjustment between these parties, it should appear that he had gotten too much, then he would pay it back.

Now, the character of these mortgages was discussed by the supreme court of our state in the leading case of Hagerman v. Building & Savings Assn., and another case brought with it, in the case of Mercer v. Concordia Building & Savings Assn., 25 O. S., page 186. The court say:

"After breach of the condition of a mortgage given to secure the payment of stated dues, interest on loans advanced, and fines, the decree in an action to foreclose should be confined to the amount of such dues, interest and fines, then due and unpaid."

That seems a pretty plain declaration that this mortgage does not become due and become forfeited, as far as its running any longer is concerned, in the manner which is claimed by the receiver. Nor do we see that the fact that the corporation is insolvent tends at all to change this contract and make it any different from what it was before. We are unable to see why the contract is not to receive the same construction, and why there should not be the same forfeiture, if there is to be a forfeiture applied, or the same want of it, if it is not to be applied, in the one case as in the other. In the case of Hagerman v. Building & Savings Assn., *supra*, the contract was different in its terms from that which we are now considering. It was there provided:

"I promise to pay to the Ohio Building & Savings Association of Dayton, Ohio, the sum of two thousand dollars, value received, in an advanced loan of two thousand dollars, the full amount on ten shares of stock in said association owned by me, on each of which I agree to pay a weekly installment of twenty-five cents, in all $2.50 per week, and on one thousand, one hundred and fifty dollars I agree to pay interest at the rate of six per cent. per annum, in equal monthly installments of $5.75 each; all to be paid until the said association is dissolved according to the constitution and by-laws thereof."

Now in that case it was expressly provided in that contract that the man should pay the dues, and the dues were just exactly as expressly secured by the obligation and by the mortgage, as the interest upon the money which was advanced. In that case the court said that as far as the premium was concerned, which in this case was about $400, the mortgagor was not bound to pay any interest upon that, and they said that by reason of the non-payment of interest and dues, there was no such forfeiture as made the whole of it due.

The court discuss the basis upon which the account between the mortgagee and the mortgagor should be stated. They say:

"The condition of defeasance contained in the several mortgages in these actions, was the punctual payment of the stated dues upon the stock on which the loan was advanced, the interest on the loan advanced, taxes and fire insurance on the mortgaged premises, and all fines and forfeitures, according to the constitution and by-laws of the mortgagee. In these cases there was no claim made on account of taxes or fire insurance. It is quite clear that this condition was broken when default was made in the payment of stated dues, interest on loans advanced, and fines assessed, in accordance with proper by-laws—to-wit: stated dues weekly, interest monthly, and fines when assessed.

"It is also stipulated in the mortgages, that upon condition being broken, the whole amount of the par value of the shares of stock upon which each loan was advanced, should become due, and the mortgage foreclosed.

"In these cases, an account upon the basis of the par value of the stock is not asked for; and it could not have been granted if it had been prayed for. Such a decree would simply work a forfeiture to the association of the amount of the premiums bid for the right of precedence in taking the loan, and would wholly deprive the borrower of all benefit intended to be secured by it. Nor can the amount of the loan advanced be made the basis of the account. The policy upon which these organizations are founded, does not contemplate that a loan advanced to a member upon his stock will ever be called in.

"Whenever the assets of the corporation become equal to the par value of all

its stock, it ceases to exist, except for the purpose of winding up its affairs; and a member, who has received a loan on his stock, which, together with the premium bid therefor, equals the par value of this stock, has no interest in the final distribution, unless there be a surplus of assets. The real transaction between the corporation and such member is equivalent to the redemption of his stock in advance; saving, however, to the member his rights as a corporator, and to the corporation its rights to collect from him the stated dues, interest on the loan advanced, and such fines as may be lawfully assessed against him. Such being the true relation of the parties, and such their reasonable expectations, a court of equity, upon breach of the condition of defeasance, by failure to pay stated dues, interest on loans advanced, or fines assessed, will not state an account on the basis of the loan advanced; but will ascertain the amount of dues, interest, and fines due and unpaid, and will decree accordingly.

"If it be objected that this mode of stating the account, where the parties have agreed upon a different basis, is judicial legislation, we answer, not so. It is simply a case, where a court of equity will not adopt the agreement of the parties as to a rule of damages, where the agreed rule would make the recovery altogether disproportionate to the loss occasioned by the default, and would produce a result contrary to the evident design of the legislature in creating these building associations."

Now, we do not see why the same rule there laid down should not apply in a case where a corporation is insolvent as in a case where a corporation is solvent. We do not see any more difficulty in applying it in one case than in the other.

We therefore come to the conclusion that the receiver in this case is not entitled to recover the full amount of this note for $1,000, and that he is not entitled to recover a judgment for the principal of $600 in this suit, in the manner in which it stands; and we next see what, under this contract, the receiver at present is entitled to recover. It says:

"This obligation is given for money loaned under the by-laws and regulations of said association; and in case the said monthly interest, or any part thereof"—and there was a regularly stipulated monthly interest of so much per month—"shall remain unpaid for thirty days after the same becomes due, or should the stock owned by the undersigned in said association be sold for the non-payment of the monthly installments on said stock, then and in either case this obligation shall thereupon immediately become due and collectible. But in case said interest and said installments on said stock shall all have been paid as aforesaid, then the principal of this obligation shall become due," etc.

Now, the mortgagor starts out with agreeing to pay so much money, with interest at six per cent. per annum upon it. He is bound to pay interest at six per cent. per annum upon the amount which he received. But it is no part of that contract that the principal shall ever be paid back, except that it is to be accounted for in certain ways upon the closing up of the corporation. We are of the opinion that that interest ran just as well when the corporation became insolvent as it did before it became insolvent, and that in this case the receiver is entitled to recover interest unpaid upon the money received, from the time the interest ceased to be paid. The last interest was paid in 1876, and enough had been paid so that it would run until about 1878, as we understand it.

The receiver is entitled to recover interest from that time down to the present time. And that will not be a final decree. That is, there may in the future be more to be collected under this mortgage; but that is all that the receiver at present is to receive. As far as the payment of dues is concerned, that payment of dues is not to be applied in any way upon this mortgage at present. The dues are to be applied just like everybody else's dues—to apply towards the capital stock, and that is equality and equity between these various parties,

and we think follows precisely the contract that was made between this corporation and its members in the making of these papers.

It will be noticed by counsel that we have followed this particular contract, it being somewhat different in its terms from the contract which was discussed in the case of Hagerman v. Building & Savings Assn., *supra.*

Decrees may be drawn in accordance with the views expressed by the court.

Receiver W. E. Sherwood, pp.

William E. Cushing, Arnold Green, for defendants.